IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT SEPTEMBER TERM, 1834.

---

#### RACHEL LIPPINCOTT, v. THOMAS TILTON

An agreement contained the following covenants, "that if the child and its mother both should live, the eight hundred dollars shall go to the bringing up, education and maintenance of the child ; but if the child should die, the said Rachel is to have two hundred of the eight hundred dollars, and the residue to go back to the said Thomas Tilton ; but if *both die*, the whole comes back to him, except expenses for lying in, and funeral expenses and charges ;" *held* that if both mother and child survived parturition, the mother would be entitled to all the money ; if the child died on that occasion, the mother would be entitled to two hundred dollars only, and if they both died on that occasion, the expenses of her lying in and of their funerals were to be paid.

This was an action of debt brought upon a sealed bill executed by Thomas Tilton, to Rachel Lippincott, for eight hundred dollars. The cause was tried at the Monmouth Circuit, in April term, 1832, and a verdict taken, by consent, for the plaintiff, subject to the opinion of the court at bar. The nature of the pleadings, and the points discussed on the rule to show cause, fully appear in the opinions delivered at this term.

*Wall* for plaintiff.

*Ryall*, and *J. S. Green*, for defendant.

HORNBLOWER, C. J. This action was tried before the late Chief Justice, at the Monmouth Circuit, and a verdict taken for the plaintiff for seven hundred and seventy-seven dollars and ninety-one cents, subject to the opinion of the court, upon a state of the case. The plaintiff declared on a sealed bill given by the defendant to her, dated the 18th April, 1827, for the

sum of eight hundred dollars, payable to her, her heirs and.assigns, within two years after the date thereof, with interest, from the 18th October next ensuing the date. The defendant pleaded first, *non est factum ;* secondly, after craving oyer and setting out the bill, the defendant sets out, *in hæc verba,* what he calls a deed of defeazance, bearing even date with the bill, and executed by the plaintiff and her brother, Samuel Lippincott, which in substance is as follows, viz. That in consideration of the bill so given to the plaintiff by the defendant, it was agreed by her and the said Samuel Lippincott, that they and their representatives should indemnify the defendant from all liability, costs, or charges, of maintaining the child with which she was then pregnant by the defendant; that if the child and the plaintiff *both* should *live,* the eight hundred dollars should go to the bringing up, education, and use, of the child, but if the child should die, the plaintiff should have two hundred dollars out of the eight hundred, and the residue thereof " go back " to the defendant; and if both the plaintiff *and her child* should die, the whole sum, " except expenses for lying in and funeral expenses and charges" should be returned, " come back" to the defendant. And the plaintiff, in consideration of the premises, did thereby " fully acquit, exonerate and discharge, the said Thomas Tilton from all claims, demands, damages and dues, that she might have against him, of any kind whatever, on account of his getting her with child." The defendant then pleaded, that the said Rachel, the plaintiff, was delivered of the child on the 4th of June, 1827 ; that on the 11th day of June, 1828, and before the said bill became due and payable, the child died; that thereby the plaintiff became entitled to have two hundred dollars out of the eight hundred, and the residue was to " go back" to the defendant, and then avers that on the 29th May, 1828, and *before* the death of the child, he paid to the plaintiff two hundred dollars in full satisfaction and payment of the said bill obligatory. To this plea the plaintiff put in a replication traversing the payment of two hundred dollars in satisfaction, &c. whereupon issue was joined.

On the trial of the cause, the execution of the bill and the defeasance, as it is called, was admitted; and also that the child was born and died on the days in the pleadings mentioned

Lippincott *v.* Tilton.

in reference to those events. The payment of two hundred dollars, on the day for that purpose mentioned, was also admitted, and that the body of the receipt therefor, endorsed on the bill, and signed by the plaintiff, was in the handwriting of the defendant. By the state of the case, it is agreed between the parties, that if the court shall be of opinion the said deed of defeasance was legal and competent evidence, *and* that it constituted *a bar* to the plaintiff's right of action, then the verdict shall be set aside and judgment given for the defendant with costs ; but if the court shall be of opinion that the said defeasance could not be legally received in evidence on the trial, *or* that the same is not a *bar* to the action, then the rule to show cause shall be discharged, and judgment entered for the plaintiff, &c.

The question thus submitted to the court, by the agreement of the parties, and which was argued by the counsel, appears to me not to be included in the issue. The deed set up as a defeasance, though called by that name in the plea, was not pleaded in bar, either as a defeasance, a release, or a covenant not to sue. It seems to have been set out rather as inducement to the allegation subsequently made, and on which issue was joined, viz. That after the making of the bill, and before the death of the child, the defendant had paid to the plaintiff two hundred dollars, in full discharge and satisfaction of the debt.

It is not necessary to notice the defects in the plea ; for however fatal they might have proved on a general or special demurrer, the plaintiff thought proper to reply and tender an issue on the fact of such payment. The question, therefore, for the consideration of the court, upon this record, is whether the instrument called a defeasance was legal and proper evidence upon the trial of that issue. That it was so, as *res integra*, a part of the original contract, I have no doubt. Then the question arises, what effect ought it to have had on the verdict ; and this will bring us to the true question in the cause ; namely, What was the intention of the parties, either expressed on the face of the documents, or resulting from a sound, legal construction of them ?

It will be perceived, from the remarks already made, that I do not consider the deed executed by the plaintiff and her brother, either as a defeasance, release, or covenant not to sue. It

has not one distinctive feature of a defeasance; " defeasance," says Coke, " is fetched from the French word *defaire*, i. e. to defeat or undoe; *infectum reddere quod factum est.*" *Co. Lit.* 236, *v. Sec.* 384. A defeasance is an instrument which avoids or defeats the force or operation of some other deed; and that which in the *same deed* would be called a condition, if in *another deed*, is a defeasance; but it must contain proper words to defeat or put an end to the deed, of which it is intended to be a defeasance; as that it shall be void, or of no force or effect. *Lacy* v. *Kynaston*, 2 *Salk.* 575; 2 *Saund.* 47, *n note* 1; 2 *Bl. Com.* 327 & 342. Or that so much money, when paid, shall be in full satisfaction and discharge, &c. *Trevett* v. *Aggas*, *Willes R.* 107; *Comyn R.* 568; *s. c.* 2 *Jac. L. D.* 229, 230; *Hoffman* v. *Brown*, 1 *Halst.* 429.

But the instrument in question, so far from containing any stipulation, that upon the performance of any thing, or the happening of any event, the sealed bill should become void, or that the deed executed by the plaintiff and her brother, might be pleaded in bar to an action on the bill, actually contemplates the eight hundred dollars as paid to the plaintiff, and the whole, or a part of it, to be repaid on certain contingencies.

That the instrument in question is not in form, and cannot be made by construction to operate, either as a release, or a covenant not to sue, is, to my apprehension, too plain to need any argument or illustration. *See Willes R.* 109 *in note; Dean* v. *Newhall*, 8. *T. R.* 168, *and cases there cited.* But then it does not follow, that it is to have no influence in the decision of this cause. On the contrary, it is a very important *part* of the contract between the parties. The two writings, in fact, constitute but one agreement, and the question recurs upon the sound construction of it.

" In doubtful cases," (says Buller, just.) " where the parties express themselves inaccurately, the courts will expound their contracts according to their intention." *Smith* v. *Mapleback*, 1 *D. & E.* 446. The difficulty in this case is owing to the indefinite language used by the parties, viz. " If the child and its mother both should live," then the eight hundred dollars are to go to the bringing up, education and use of the child. If "*both* should live," live how long? until the child should be educated and

brought up? until he or she attained the age of twenty-one years, or to some earlier or more remote period of life? Suppose the mother should die when the child was one, five, ten, or fifteen years of age, were the eight hundred dollars to be returned in that event, and the child to go unsupported and uneducated? Because it is *only* on condition that *both live*, that the money is to be applied to the education and support of the child. Nor is there any provision made to meet the contingency of the child surviving the mother; " but if the child should die, the said Rachel is to have two hundred dollars out of the eight hundred, and the residue thereof is to go back, &c." Here the question recurs again ; if the child should die; die when? In infancy, in childhood, at adult years; before or after the age of twenty-one? If the child died at the age of one, two, five, seven, ten or twelve years, was the mother to repay the six hundred dollars?

But once more; "if both die, the whole comes back;" die, when ? Die, they certainly must, sooner or later. Is then the whole sum to come back whenever the mother and child shall both be dead, let that event happen when it may? If so it was a senseless agreement: if not so, then at what period must the event happen to entitle the defendant to have the whole eight hundred dollars returned to him? This question must be answered, and to answer it we must fix a period. but what period shall we fix? We have no more right to say the event must happen, within one, five or ten years after the birth of the child, than to say it must be within twenty or fifty years after. The counsel for the defendant failed to give the court any rule on this point; they seemed to take it for granted that because the child was dead, the mother would be bound to refund six hundred dollars of the money, if she had it, and that therefore to avoid multiplicity of suits, she ought not to recover in this action.

But it appears to me the agreement is susceptible of a sound and satisfactory construction. The defendant had been instrumental in destroying the virtue of the plaintiff; at least he admitted himself to be the illegitimate father of the child with which she was pregnant ; he agreed to give her eight hundred dollars ; the child was not yet born ; it and its mother had to pass through the perils of childbirth ; it might never be born

alive, or if born alive, the child and its mother might not long survive; a childbed fever seizing upon the mother, and the weakness, or disease, common to new born infants, might speedily terminate their lives, and transfer them both from the lying-in chamber, to the grave. In that event, neither of them would have any use for the money, and no body else could have any claim to it except so far as to repay to her surviving friends the expenses of her lying in, and the funeral charges. Another contingency was, that the mother might survive the sickness and dangers incident to her situation, but the child might die at, or soon after, its birth, and as one object, at least, was to provide for the support and education of the unfortunate offspring, if it lived, therefore in the event of its death, at or near the period of its birth, the mother was to relinquish all over two hundred dollars of the money agreed to be paid. A third contingency was, that both mother and child might live, not *forever*, not for one, or five, or ten years, but that they might *live*, live through the perils of childbirth, and the days, or weeks, or months of weakness and sickness often consequent thereon. In that case she was to have the eight hundred dollars, and as it was not to be considered merely as the price of her virtue, the money, if necessary for the purpose, was to be appropriated by her to the support, education, and use, of the child. This I take to have been the intention of the parties, and the phraseology and scope of the instrument justifies the construction. Can it be reasonably imagined that when the agreement says, "if both *die*, the whole comes back, except *expenses for lying in and funeral expenses*," that the parties meant, if both died at *any time*, one, five, ten, twenty or fifty years thereafter, that an account of *lying in* expenses was to be raked up, and that those, with the funeral expenses, should be retained out of the money? If mother and child died in childbirth, or in sickness consequent thereon, there would be some reason why the guilty author of their misfortunes should pay those expenses; but if mother and child survived the dangers of that crisis; lived to enjoy health, and afterwards died of casual disease, or accident, or old age, there would seem to be no reason why the defendant should then be charged with lying in and funeral expenses. In my opinion, the contingency, on the happening of which the plaintiff was to be

Lippincott *v.* Tilton.

entitled to retain the whole eight hundred dollars, has taken place; the mother *and* the child " *both lived;* " they both survived the lying in; the child continued in life until it was more than a year old, and its subsequent death neither avoided the obligation, nor defeated the mother's right to recover the money. If we do not limit the expression, " both die," to a dying in childbirth, or in sickness consequent thereon, then we cannot limit it at all, and, consequently, whenever *both* are dead, whether sooner or later, all the money, except lying in and funeral expenses, is to be returned: there can be no apportionment.

I will only add, that whatever may be the legal or equitable rights of the parties, the jury, upon the issue and evidence in the cause, could have rendered no other verdict than the one they did. The issue they were sworn to try, was, whether the two hundred dollars paid on the 26th of May, 1828, were *then* paid by the defendant, and received by the plaintiff, *in full satisfaction and discharge of the bill.* It was not whether, by some subsequent event, the plaintiff had lost her right to receive any more money on the contract, but whether, at the time it was paid, it was a payment in full satisfaction and discharge of the obligation. In the first place, there was no evidence, whatever, of any agreement, or understanding, between the parties at the time of the payment, that it should be in full: on the contrary, the receipt, written by the defendant himself, for the two hundred dollars, shows it was a partial payment; a payment *on*, not a payment *of* the obligation. Secondly, a payment of two hundred dollars, on the 26th of May, 1828, could not, upon the defendant's own principles, have been in full satisfaction. The child was then living, and so long, at least, as it lived, the bill continued in full force. Its subsequent death, though it might bar a further recovery, could not convert a previous partial payment into an accord and satisfaction.

On both points, therefore, I am of opinion the verdict must stand, and the rule be discharged, with costs.

FORD, J. These parties have put themselves on two issues for the conclusion of their disputes; one whether the defendant made a sealed bill for eight hundred dollars to the plaintiff, as set out in the declaration; all difficulty about which was set-

tled at the trial by his admission that he made it ; the whole dis-
cussion turns on the second issue, whether he paid her two hun-
dred dollars, in full satisfaction of the bill, under the covenants
and agreements in a certain defeasance. The fact of paying her
two hundred dollars was admitted ; but whether it was in full
satisfaction, under their covenants and agreements in the defea-
sance, is the matter disputed. The deed called a defeasance,
under the hands and seals of Rachel Lippincott, and Samuel
Lippincott, her security, bearing date the 18th of April, 1827,
recites her pregnancy to be the consideration for his giving her
a bill of the same date for eight hundred dollars, payable in
two years, with interest from the 18th of the following Octo-
ber ; the deed also releases him from all damages, and by it
they indemnify him forever against the maintenance of the
child : then follow the covenants in question ; " That if the
child and its mother both should *live*, the eight hundred dollars
shall go to the bringing up, education and maintenance of the
child ; but if the child should *die*, the said Rachel is to have
two hundred of the eight hundred dollars, and the residue to go
back to the said Thomas Tilton ; but if *both die*, the whole
comes back to him, except expenses for *lying in*, and *funeral*
expenses and charges."

The child, which was born the 4th of June, 1827, died about
a year after, on the 11th of June, 1828 ; whereby the defend-
ant insists he became entitled, under the agreement in the de-
feasance, to a return of all the money except the two hundred
dollars. If so, the payment of the residue to her would be a
useless thing, only burthensome to him and no advantage to her,
as she would be obliged immediately to refund it back again,
and if this be the case, it is certainly better for both parties,
that the defeasance, so called, should operate at once as a re-
lease of the residue, if it can so operate in law.

But how does he entitle himself to a return of the residue ?
By the defeasance it is destined to a far different use than his,
and was never to return to him, " *if the mother and child should
both live.*" Did they not both live ? It did not mean if they both
lived forever, (neither party expected or meant that) nor if they
should live till the bill became payable ; nothing in the bill or
defeasance will countenance such a construction ; nor was it.

Lippincott *v.* Tilton.

meant if they should live for a year, or any other length of time, for no length of time is mentioned. The question is, what meaning the parties had in their minds, according to the other words and scope of the instrument, when they said, " if the mother and child should both live." The defeasance mentions her pregnancy ; the child had yet to be born, and the perils that would attend the lives both of the mother and child, at the time of parturition, were undoubtedly meant by the loose terms used in forming this condition. If the mother and child should both live through those perils, she was to have all the money ; there is no other construction so probable, or that will reconcile the other parts of the agreement together.

The next covenant is, that the whole sum specified in the bill shall return to him, except two hundred dollars, " if the child should die." It does not say *when* and cannot mean if it should ever die. The parties knew it must die sometime or other, and it would be no condition, because no contingency ; neither can it mean after ten or fifteen years, for before that time it might be expended in maintenance or education under the first condition. The parties certainly had in view the same perilous occasion before mentioned, if the child died in parturition, and any other time will render the first two conditions incompatible.

The third condition is, that the whole of the money shall come back to the said Tilton, except expenses for *lying in* and *funeral* expenses and charges, if both mother and child should die. It does not mean *when* they die; that would be a limitation over ; not a condition; it was not contingent whether they should ever die, but whether they should both die at a particular time ; it undoubtedly had reference to the same perilous occasion as the two former conditions, it being manifested in every clause of this third contingency, which expressly couples their death with *lying in* and the charges of their funeral. If they both survive parturition, she is to have all the money; if the child should die on that occasion, she is to have only two hundred dollars ; if they both die on that occasion, he is to be at the expenses of her lying in and their funerals. But they both lived through parturition; her right to the whole of the money was no longer contingent; it became fixed by that event ; the two hundred dollars were not in full satisfaction, and the verdict is right in finding the full sum.

It is also said to be right because no agreement can operate as a release, except it be between the same parties, whereas they are not the same ; Samuel Lippincott, a party to the agreement, is not to the bill, and therefore that this is a collateral deed and not a defeasance.   The verdict is also said to be right on another ground, respecting the plea; the two hundred dollars were not in full satisfaction *at the time they were paid*, the contingencies as to life and death being then all unsettled, yet the plea says it was then in full.   But if the verdict is established on the first point, it is of no importance whether these last two objections are settled in the cause or not.   I am of opinion that judgment must be rendered for the plaintiff on the verdict.

Judgment for Plaintiff.